Filed 8/20/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| L.A. TAXI COOPERATIVE, INC., et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> THE INDEPENDENT TAXI OWNERS ASSOCIATION OF LOS ANGELES et al., <br><br> Defendants and Appellants. | B255909/B257633 <br><br> (Los Angeles County <br> Super. Ct. No. BC 517005) |

APPEALS from orders of the Superior Court of Los Angeles County, Kevin C. Brazile, Judge.  Affirmed in part, reversed in part, and remanded with directions.

Marron Lawyers, Paul Marron and Gregory Scarlett for Plaintiffs and Appellants.

Neil C. Evans for Defendants and Appellants.

_____

**INTRODUCTION**

Plaintiffs L.A. Taxi Cooperative, Inc. doing business as Los Angeles Yellow Cab (Yellow Cab) and Bell Cab Company, Inc. (Bell Cab) sued defendants The Independent Taxi Owners Association of Los Angeles (ITOA), L.A. Checker Cab Cooperative, Inc. (Checker Cab), and Leonid Satanovsky for false advertising on the Internet.[1]  Defendants filed a special motion to strike plaintiffs' entire complaint pursuant to Code of Civil Procedure section 425.16 (the anti-SLAPP motion).[2]  The trial court denied the anti-SLAPP motion, ruling that defendants had not met their threshold burden of showing that the alleged false advertising fell within the purview of section 425.16 (the anti-SLAPP statute).  Defendants appeal, contending that the alleged false advertising constituted communications on matters of public interest made in a public forum.  Plaintiffs filed a cross-appeal, contending that the trial court erred in declining to find that section 425.17, subdivision (c), the commercial speech exemption to the anti-SLAPP statute, applied to bar defendants' anti-SLAPP motion.  Plaintiffs separately appealed from the denial of their motion for fees and costs under section 425.16, subdivision (c), arguing that the anti-SLAPP motion was frivolous.  We consolidated the appeals.

We conclude that the trial court correctly denied the anti-SLAPP motion, as the conduct alleged constituted purely commercial speech.  We further conclude that plaintiffs met their burden of demonstrating the applicability of the commercial speech exemption of section 425.17.  With respect to the attorney fees motion, we conclude that no reasonable basis existed for asserting that the allegedly false advertisements constituted conduct in connection with an issue of

---

[1]  L.A. City Cab, LLC, originally a plaintiff, is no longer a party to this appeal.

[2]  All further statutory citations are to the Code of Civil Procedure, unless otherwise stated.

public interest, and that the motion was therefore frivolous; accordingly, plaintiffs are entitled to recover their attorney fees.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.    The Complaint

On August 2, 2013, plaintiffs filed a complaint for damages and injunctive relief against defendants. The complaint alleged that Yellow Cab, Bell Cab, ITOA, and Checker Cab are taxicab service companies operating in Los Angeles County. It further alleged that defendants engaged in false advertising on the Internet. According to the complaint, taxi companies engage in "search advertising" -- they purchase keyword advertising from search engines, such as Google, Bing and Yahoo, to ensure that whenever a consumer enters a particular word or combinations of words, an advertisement created by the taxi company appears at the top of the search results. The complaint alleged that defendants created search advertisements that are false and deceptive, as consumers viewing the advertisements are led to believe they are being directed to plaintiffs' phone numbers or websites when they are actually directed to phone numbers and websites wholly owned and operated by defendants. Consumers are confused because the search advertisements use plaintiffs' trade names in conjunction with defendants' websites and defendants' telephone reservation numbers.

The complaint alleged two causes of action: (1) violation of Business & Professions Code section 17500, which prohibits false or misleading statements when advertising one's services, and (2) violation of Business and Professions Code section 17200, which prohibits unfair competition in the form of any unlawful, unfair or fraudulent business act or practice. With respect to the latter cause of action, the complaint alleged the search advertisements are unlawful in that: (1) the advertisements violate Business & Profession Code section 17500, as

3

alleged in the first cause of action; and (2) the advertisements violate The City of Los Angeles Board of Taxicab Commissioners' Taxicab Rules and Regulations section 3.10(d), which states "'[i]n no event shall any taxicab operator advertise or list a telephone number serving said operator which purports to be or is used as a telephone number of another taxicab company, real or fictitious, or other types of vehicles for hire.'"

In a concurrently filed application for a temporary restraining order (TRO), plaintiffs provided multiple examples of the alleged false advertising. For example, Kia Tehrany, director of operations for Yellow Cab, stated that he conducted a search using the terms "'Yellow Cab Los Angeles.'" The results included the following:

Yellow Cab Los Angeles - Call 800-521-8294 or Book Online!

www.lataxi.com

Our Cabs get you there Fast & Safe.

Tehrany stated that neither the listed telephone number nor the website was owned or controlled by Yellow Cab. Instead, the website contained information related solely to taxi services provided by ITOA.[3]

Defendants filed an answer, generally denying the allegations of the complaint.

On November 19, 2013, plaintiffs filed a first amended complaint (FAC), adding a false advertising and trade name infringement cause of action under Title 15 United States Code section 1125 (Lanham Act), based on the same facts.

---

[3] The superior court denied the application for a temporary restraining order (TRO), finding plaintiffs had failed to demonstrate irreparable injury.

## B.     The Anti-SLAPP Motion

On December 3, 2013, defendants filed a special motion to strike the FAC. They argued that the gravamen of each cause of action is that "Defendants allegedly used the [I]nternet to promote Defendants' taxi services, in a manner which allegedly violates Plaintiffs' rights." According to defendants, because "the [I]nternet is considered a public forum," and because the causes of action "seek to enjoin or redress the first amendment 'free speech' rights of the Defendants," they met their burden of showing that the alleged wrongful conduct fell within the protection of the anti-SLAPP statute. Defendants also argued that plaintiffs could not prevail on the merits of their causes of action. Defendants sought attorney fees and costs pursuant to section 425.16, subdivision (c)(1).

Plaintiffs opposed the anti-SLAPP motion, arguing that defendants' search advertisements constituted purely commercial speech not protected by the anti-SLAPP statute. Citing numerous cases, plaintiffs noted that California courts have held that purely commercial speech is not protected under the anti-SLAPP statute, and that to the extent any commercial speech is protected, the speech must concern a public issue. Plaintiffs noted that no public issues were discussed in defendants' advertisements. In addition, they argued that the advertisements fell within the commercial speech exemption of section 425.17, subdivision (c), which specifically exempts plaintiffs' causes of action from an anti-SLAPP motion. Plaintiffs asserted the commercial speech exemption applies, as (1) the subject advertisements contain "representation[s] of fact" expressly misrepresenting defendants' contact information as plaintiffs'; (2) the advertisements promote

5

defendants' business operations; and (3) the advertisements are clearly aimed at potential customers searching for taxi service information.[4]

Rather than reply to the opposition, defendants filed a stipulation taking the anti-SLAPP motion off calendar. On February 24, 2014, defendants filed a second anti-SLAPP motion. Apart from some changed dates, the motion was identical to the December 3, 2013 motion. The newly filed motion did not address any arguments or caselaw cited in plaintiffs' opposition to the earlier anti-SLAPP motion.

In opposition, plaintiffs reiterated that "[d]efendants' false Internet search advertisements constitute run of the mill 'commercial speech' which the anti-SLAPP statute was never designed to protect, and which is now expressly excluded from the statute's protection by the 'commercial speech exception' codified in Section 425.17, subdivision (c)."

Defendants' reply contended that section 425.17, subdivision (c) did not apply because defendants acted on behalf of their members, and no representations were made about plaintiffs' operations, goods or services. Defendants further argued that the instant lawsuit involved the operations and promotional activities of licensed taxicab companies on the Internet, assertedly a matter of public interest.

The hearing on the anti-SLAPP motion was not reported.[5] On March 26, 2014, the trial court denied the special motion to strike. In its written statement of

---

[4]     Plaintiffs also argued they were likely to prevail on their causes of action. In support of the opposition, plaintiffs attached the declarations filed in connection with their August 2, 2013 application for a TRO. The trial court sustained defendants' objection to the declarations as "old."

[5]     The parties acknowledge that at the hearing on the anti-SLAPP motion, plaintiffs' counsel requested the court take judicial notice of certain Los Angeles City ordinances to demonstrate that defendants are in the taxicab business. The

decision, the court ruled that defendants had failed to meet their burden of showing the speech at issue was in furtherance of their exercise of free speech in connection with a public issue, rather than speech for commercial gain. The court also addressed the commercial speech exemption, determining that plaintiffs had failed to meet their burden to show the applicability of the exemption.[6]

Defendants appealed from the order denying their anti-SLAPP motion. Plaintiffs cross-appealed from the court's ruling that plaintiffs failed to meet their burden of proof to show the applicability of the commercial speech exemption.

### C.    Motion for Fees and Costs

On May 30, 2014, plaintiffs filed a motion for fees and costs pursuant to section 425.16, subdivision (c)(1). Plaintiffs argued the court should award them fees and costs because no reasonable attorney would have believed defendants' anti-SLAPP motion had merit. Plaintiffs argued that controlling caselaw makes clear that purely commercial speech is not protected under the anti-SLAPP statute, and that there was no reasonable basis to believe the subject advertisements could have been entitled to protection. Plaintiffs also argued that the anti-SLAPP motion was brought for the improper purpose of delay. Plaintiffs noted that defendants filed the first anti-SLAPP motion on the same day their discovery responses were

---

trial court declined to take judicial notice. In this court, plaintiffs sought judicial notice of the same ordinances; we granted the request.

[6]    In its ruling, the trial court apparently relied upon statements in defense counsel's declaration to which it had sustained objections. Evans stated that ITOA is a nonprofit, mutual benefit corporation which acts on behalf of its members, and Checker is a cooperative corporation that acts on behalf of its owners. Evans asserted that neither ITOA or Checker owns or operates taxicabs; rather, their respective members own and operate the taxicabs. ITOA and Checker act as their members' agent in providing promotional assistance, recordkeeping and dispatch services, and interfacing with governmental entities.

7

due.  After taking the anti-SLAPP motion off calendar, defendants then re-filed essentially the same motion.  Defendants' opposition to the motion for fees and costs argued that whether the advertisements concerned a matter of public interest was a debatable issue and thus, the anti-SLAPP motion was not frivolous.

The trial court denied the motion for fees and costs, finding the anti-SLAPP motion had not been "clearly frivolous."  The court noted  the "broad manner" in which courts have construed the term "public interest," and concluded that although the case relied upon by defendants, *Wong v. Jing* (2010) 189 Cal.App.4th 1354, presented "distinct issues," defendants' reliance on it was not frivolous.  The court also found it "not clear" that defendants had brought the motion solely for delay.  Plaintiffs appealed the denial of their motion for fees and costs.

In this court, plaintiffs also filed a motion for sanctions, arguing that defendants had filed a frivolous appeal.  On July 31, 2015, we provided written notice to defendants that we were considering imposing sanctions.

## DISCUSSION

Defendants contend the trial court erred in denying their anti-SLAPP motion on the ground that they failed to meet their burden of showing the subject Internet advertisements were protected under the anti-SLAPP statute.  In their cross-appeal, plaintiffs contend the trial court erred in determining that the commercial speech exemption did not apply.  In their separate appeal (now consolidated), plaintiffs contend the court erred in denying their motion for fees and costs as the prevailing party on the anti-SLAPP motion.  We address each issue in turn.

A.     *Defendants Failed to Show Their Advertisements are Protected Under the Anti-SLAPP Statute.*

"A SLAPP suit -- a strategic lawsuit against public participation -- seeks to chill or punish a party's exercise of constitutional rights to free speech and to

8

petition the government for redress of grievances.  [Citation.]  The Legislature enacted . . . section 425.16 -- known as the anti-SLAPP statute -- to provide a procedural remedy to dispose of lawsuits that are brought to chill the valid exercise of constitutional rights.  [Citation.]"  (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055-1056 (*Rusheen*).)  To determine whether a cause of action should be stricken under the anti-SLAPP statute, section 425.16 establishes a two-part test.  Under the first part, the party bringing the motion has the initial burden of showing that the cause of action arises from an act in furtherance of the right of free speech or petition -- i.e., that it arises from a protected activity.  (*Zamos v. Stroud* (2004) 32 Cal.4th 958, 965.)  Once the moving party has met its burden, the burden shifts to the other party to demonstrate a probability of prevailing on the cause of action.  (*Ibid.*)  Only a cause of action that satisfies both parts of the anti-SLAPP statute -- i.e., that arises from protected speech or petitioning and lacks even minimal merit -- is a SLAPP, subject to being stricken under the statute.  (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89.)

Here, the trial court determined that defendants failed to meet their initial burden of showing that the subject Internet advertisements arose from protected speech.  We independently review the trial court's order denying defendants' anti-SLAPP motion.  (*Rusheen, supra,* 37 Cal.4th at p. 1055.)  In our evaluation of the trial court's order, we consider the pleadings and the supporting and opposing affidavits filed by the parties.  We do not weigh credibility or determine the weight of the evidence; rather, we accept as true the evidence favorable to plaintiffs and evaluate defendants' evidence only to determine if it has defeated that submitted by plaintiffs as a matter of law.  (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325.)  In addition, we may consider documents properly subject to judicial notice that help

9

provide a complete context of the case, even if the documents were not before the trial court when it ruled on the anti-SLAPP motion. (*Id*. at p. 306, fn. 2.)

Section 425.16 protects any act "in furtherance of [a] person's right of petition or free speech under [the] United States Constitution or the California Constitution in connection with a public issue." (§ 425.16, subd. (b)(1).) Under the statute, an "'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).) Below, the parties argued whether the subject advertisements fell within either section 425.16, subdivision (e)(3) or subdivision (e)(4). The trial court held that the advertisements fell within neither section. We agree.[7]

It is well established that commercial speech that does nothing but promote a commercial product or service is not speech protected under the anti-SLAPP

---

[7] In their reply brief, defendants contend for the first time that the advertisements may fall within section 425.16, subdivision (e)(2), as written statements made in connection with an issue under review, noting that plaintiffs represented that they complained about the advertisements to the Taxicab Commission. As this argument was first raised in the reply brief, it is forfeited. (*Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 660 [contention forfeited where raised for the first time in reply brief without a showing of good cause].)

10

statute. For example, in *Nagel v. Twin Laboratories, Inc.* (2003) 109 Cal.App.4th 39 (*Nagel*), the defendant company argued that the listing of product ingredients on labels and a website was commercial speech protected under the anti-SLAPP statute. The court disagreed, holding that commercial speech that is not intertwined with noncommercial speech is not entitled to the protection of the anti-SLAPP statute. (*Id.* at p. 47.) Similarly, in *Consumer Justice Center v. Trimedica International, Inc.* (2003) 107 Cal.App.4th 595 (*Consumer Justice Center*), the court held that a company's claims about its herbal supplement in product literature constituted purely commercial speech not protected under the anti-SLAPP statute. (*Id.* at pp. 599-601.)

Here, the subject Internet advertisements are commercial speech that does nothing other than direct consumers to a website containing information about the specific taxicab company or to a telephone number to make reservations for a taxicab. Indeed, in his declaration in support of the anti-SLAPP motion, defendants' counsel acknowledged that the goal of the Internet advertisements was to have a consumer "'click' onto the [defendant] Company's website and select that Company to provide taxi service . . . ." The FAC alleges that when a consumer seeking taxicab services searches for taxicab companies on an Internet search engine, a false and deceptive advertisement would appear on the search result webpage. It further alleges that a reasonable consumer viewing the advertisement would believe that the listed telephone number and website belonged to a plaintiff taxicab company, when the number and website actually were owned and controlled by a defendant taxicab company. As alleged, the advertisements made no statements about the taxicab industry, the taxicab licensing process, or local taxicab regulations. In short, the subject advertisements are purely commercial speech.

11

Commercial speech that involves a matter of public interest, however, may be protected by the anti-SLAPP statute. (*Consumer Justice Center*, *supra*, 107 Cal.App.4th at pp. 600-601.) Defendants contend that the subject advertisements involve a matter of public interest because "public transportation by taxi companies in the City and County of Los Angeles" and information about availability of taxi services are matters of public interest. Below, defendants also argued that the advertisements were made in connection with a matter of public interest because the advertisements concerned the operations and promotional activities of licensed and regulated taxi companies on the Internet. We disagree.

The commercial speech here was not made in connection with a matter of public interest, as that term is used in the anti-SLAPP statute. In *Consumer Justice Center*, the court held that commercial speech about a specific product or service is not a matter of public interest within the meaning of the anti-SLAPP statute, even if the product category (herbal dietary supplements) is a subject of public interest and the products are regulated by public agencies (herbal supplements are regulated by the Federal Trade Commission and the Food and Drug Administration). The court concluded that the commercial speech at issue was not about herbal supplements in general, but about the specific properties and efficacy of a particular product. (*Consumer Justice Center*, *supra*, 107 Cal.App.4th at p. 601.) It expressly declined the company's invitation to "examine the nature of the speech in terms of generalities instead of specifics," because to do so would render "nearly any claim . . . sufficiently abstracted to fall within the anti-SLAPP statute." (*Ibid*.) The court explained: "Construing the statute in this manner would allow every defendant in every false advertising case (or nearly any case that involves any type of speech) to bring a special motion to strike under the anti-SLAPP statute, even though it is obvious that the case was not filed for the purpose

12

of chilling participation in matters of public interest. . . . [Moreover], every such case would be delayed for a period of months or years while the appellate court used its scarce resources to consider any merit it might have.  We do not believe the Legislature intended the statute to be construed in such a manner, and decline to do so." (*Id*. at p. 602; see also *Mann v. Quality Old Time Service, Inc*. (2004) 120 Cal.App.4th 90, 111 [defendant company's statements to governmental agencies and customers concerning its alleged unlawful dumping of toxic chemicals not protected under anti-SLAPP statute; although pollution is matter of public interest, statements were not about pollution or potential public health and safety issues in general, but about company's specific business practices]; *Commonwealth Energy Corp. v. Investor Data Exchange, Inc*. (2003) 110 Cal.App.4th 26, 28-29 [telemarketing pitch made on behalf of firm selling information was not speech "made in connection with a public issue or an issue of public interest" because pitch was not "a disquisition on the role of information in the investment market or the general need to be wary about investment scams"] italics omitted.)  Here, the subject advertisements purported to provide the contact information for a particular taxicab company.  The commercial speech at issue was not about taxicab companies in general, but about a specific taxicab company.  Thus, it was purely commercial speech.

We find further guidance on the issue from *Nagel*.  There, the defendant manufacturer of a nutritional supplement used by dieters argued that because the product ingredient (ma huang or ephedra) and its effect on weight management were matters of public interest, the listing of the ingredient on labels and a website were made in connection with a matter of public interest. (*Nagel*, *supra*, 109 Cal.App.4th at p. 47.)  The court disagreed, concluding that listing ingredients did not constitute participation in the public dialogue on weight management.  Rather,

13

"the labeling on its face was designed to further [defendant's] private interest of increasing sales for its products." (*Id*. at pp. 47-48.) Similarly here, the subject advertisements did not constitute participation in any public dialogue about public transportation via taxicabs, the taxicab industry, or taxicab licensing and regulation. Rather, the advertisements on their face were designed to further defendants' private interest in increasing the use of their taxicab services.

Below, defendants cited *Wong v. Jing*, *supra*, 189 Cal.App.4th 1354, to support their contention that the subject advertisements involved a matter of public interest. That case, however, provides no support for defendants' contention. There, a father posted a review about his son's dentist on Yelp, a consumer review website. He stated that he regretted taking his son to the dentist because she used laughing gas (nitrous oxide) harmful to a child's nervous system, and used a cheaper dental filling containing mercury. (*Id*. at p. 1361.) When the dentist sued for libel, the father filed an anti-SLAPP motion, arguing that his review involved a matter of public interest. The appellate court agreed, holding that "consumer information that goes beyond a particular interaction between the parties and implicates matters of public concern that can affect many people is generally deemed to involve an issue of public interest for purposes of the anti-SLAPP statute." (*Id*. at p. 1366.) The court determined that the review went "beyond parochial issues concerning a private dispute about particular dental appointments. It implicitly dealt with the more general issues of the use of nitrous oxide and [mercury in dental fillings], implied that those substances should not be used in treating children, and informed readers that other dentists do not use them. Thus, the review was not just a highly critical opinion of [the dentist's] performance on particular occasions; it was also part of a public discussion and dissemination of information on issues of public interest." (*Id*. at p. 1367.) In contrast, defendants'

14

advertisements did not deal with the more general issues of public transportation or taxicab licensing and regulation, and were not part of a discussion on those general issues. More important, *Wong v. Jing* did not involve commercial speech. The father was not a commercial speaker, and his review was not an advertisement. In short, *Wong v. Jing* provides no reasonable basis for defendants' contention that their advertisements involved a matter of public interest.

On appeal, defendants argue that *Hunter v. CBS Broadcasting, Inc.* (2013) 221 Cal.App.4th 1510 (*Hunter*) supports their contention that the subject advertisements involved a matter of public interest. There, the appellate court held that a television network's selection of a weather anchor for a primetime news broadcast was an act in furtherance of the exercise of free speech. (*Id*. at p. 1521.) In dicta, the court addressed the waived argument that the selection of the weather anchor was not done "in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e)(4).) The court observed that although the selection of a weather anchor might not be an issue of public interest, the selection furthered an issue of public interest -- weather reporting. (*Hunter*, *supra*, at pp. 1526-1527.) *Hunter* does not assist defendants, as it involved news broadcasting, not commercial speech. Moreover, the mere fact that the subject of an advertisement is a matter of public interest or enjoys the full protection of the First Amendment of the federal Constitution does not render the advertisement protected activity under the anti-SLAPP statute. Thus, in *Rezec v. Sony Pictures Entertainment, Inc*. (2004) 116 Cal.App.4th 135, the court held that even though films enjoy full First Amendment protection, advertisements about films are commercial speech not entitled to protection under the anti-SLAPP statute. (*Id*. at p. 137.) The court rejected the defendant's argument that because the public is interested in films, promotional advertisements for films are necessarily "'an issue of public interest'"

15

within the meaning of the anti-SLAPP statute. (*Id*. at p. 143.) In short, defendants have cited no caselaw that supports their contention that the subject advertisements involved a matter of public interest.

B.      *Plaintiffs Demonstrated the Commercial Speech Exemption Applied.*

Plaintiffs contend that not only are the subject advertisements purely commercial speech not protected under the anti-SLAPP statute, but the advertisements also fall within the commercial speech exemption set forth in section 425.17, subdivision (c). We agree.

As set forth in section 425.17, subdivision (a), the Legislature was concerned with the abuse of the anti-SLAPP statute. To curb such abuse, it placed limits on when an anti-SLAPP motion may be brought. One such limitation is set forth in section 425.17, subdivision (c), the commercial speech exemption, which provides that the anti-SLAPP statute does not apply to claims brought against a person primarily engaged in the business of selling goods or services, arising from any statement or conduct by that person, if both of the following conditions exist: (1) "[t]he statement or conduct consists of representations of fact about that person's or a business competitor's business operations, goods, or services, that is made for the purpose of obtaining approval for, promoting, or securing . . . commercial transactions in, the person's goods or services, . . . "; and (2) "[t]he intended audience is an actual or potential buyer or customer, or a person likely to repeat the statement to, or otherwise influence, an actual or potential buyer or customer . . . ." (§ 425.17, subd. (c).) Plaintiffs, as the party seeking the benefit of the commercial speech exemption, have the burden of proof on each element. (*Simpson Strong-Tie Co., Inc. v. Gore* (2010) 49 Cal.4th 12, 26.)

The trial court concluded that plaintiffs failed to satisfy the first element -- that defendants were persons primarily engaged in the business of selling goods or

16

services.  Relying on *All One God Faith, Inc. v. Organic & Sustainable Industry Standards, Inc*. (2010) 183 Cal.App.4th 1186, 1212-1213 (*All One God Faith*), the court held that because defendants were mutual benefit nonprofit or cooperative corporations who acted on behalf of their members, they were not persons primarily engaged in the taxicab service business.  As explained below, we disagree.

In *All One God Faith*, a mutual benefit trade association whose members consisted of "large, global brands and private label manufacturers of beauty and personal care products to small, specialty brands, raw ingredient manufacturers, and ingredient suppliers" sought to develop an "organic" certification for use by its members with their personal care products. (*All One God Faith, supra*, 183 Cal.App.4th at p. 1194.)  A nonmember competitor sued, arguing that the certification was contrary to federal standards for the term "organic," and thus the certification would constitute false advertising. (*Id*. at p. 1192.)  The trade association filed an anti-SLAPP motion, which the trial court denied on the basis that the association had failed to meet its threshold burden of demonstrating that the commercial speech was protected under the anti-SLAPP statute.  The court also concluded that the commercial speech exemption did not apply. (*Id*. at pp. 1197-1198.)  Both parties appealed.  The appellate court first affirmed the order denying the trade association's anti-SLAPP motion, concluding that the certification was purely commercial speech not protected under the anti-SLAPP statute. (*Id*. at pp. 1197-1198, 1210.)  The court went on to hold that because the trade association did not produce or manufacture any cosmetic or personal care products, but acted only on behalf of its members who sold such goods, it was not "'a person primarily engaged in the business of selling or leasing goods or services.'"  Thus, the commercial speech exemption in section 425.17 did not apply. (*Id*. at p. 1218.)

17

*All One God Faith* is distinguishable.  Defendants here are not trade associations uninvolved in the business of selling or leasing goods and services.  Rather, ITOA and Checker are corporations who hold taxicab franchises "to provide taxicab transportation services in the City of Los Angeles as a primary service provider."  Their corporate structure is their method of conducting the taxicab business.  Thus, ITOA and Checker are persons primarily engaged in the business of selling services within the meaning of section 425.17, subdivision (c).  We also independently conclude that the advertisements made representations of fact about plaintiffs' contact information in order to promote defendants' services, and that the intended audience of the advertisements were potential customers of plaintiffs' or defendants' services.  Accordingly, plaintiffs met their burden of demonstrating that their causes of action were exempted from the anti-SLAPP statute.[8]

C.      *Plaintiffs Are Entitled to Fees and Costs Under Section 425.16, Subdivision (c).*

Under section 425.16, subdivision (c)(1), "[i]f the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion . . . ."  "Frivolous in this context means that any reasonable attorney

---

[8]      We note that defendants repeatedly referred to themselves as taxicab companies in their anti-SLAPP motion, despite being on notice that plaintiffs would raise the issue of the applicability of the commercial speech exemption.  Moreover, the fact that ITOA and Checker may not own any taxicabs is not sufficient to show that they are not in the taxicab business.  For example, one can provide taxicab service using a leased vehicle.  Indeed, the ordinances granting ITOA and Checker taxicab service franchises expressly provide that taxicabs registered under the franchise may be owned by the grantee, its members or a commercial lending agency.

would agree the motion was totally devoid of merit." (*Gerbosi v. Gaims, Weil, West & Epstein, LLP* (2011) 193 Cal.App.4th 435, 450.) While we review the trial court's determination for an abuse of discretion, if a motion is determined to be frivolous, an award of attorney fees is mandatory. (*Moore v. Shaw* (2004) 116 Cal.App.4th 182, 199-200 [trial court lacked discretion to deny plaintiff's fee request where defendant's alleged underlying conduct clearly was not an act in furtherance of free speech in connection with a public issue].) The trial court found defendants' motion was not "clearly frivolous" because courts have broadly construed the phrase "in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).) It further found defendants' reliance on *Wong v. Jing*, though misplaced, was not frivolous. We disagree.

As set forth above, it was well-established when defendants filed their motion that purely commercial speech is not protected under the anti-SLAPP statute. Defendants cited no case -- and we are aware of none -- finding advertisements designed solely to promote a party's goods or services to be protected speech "in connection with a public issue or an issue of public interest." Indeed, plaintiffs' opposition to defendants' first anti-SLAPP motion cited controlling cases that held to the contrary. (See *Nagel*, *supra*, 109 Cal.App.4th at p. 47 [statements about specific dietary supplement on a Website not speech in connection with a matter of public interest]; *Consumer Justice Center*, *supra*, 107 Cal.App.4th at p. 601 [statements about specific regulated herbal supplements not speech in connection with an issue of public interest].) Nonetheless, defendants failed even to address this authority when they filed their second anti-SLAPP motion. Nor did they provide any reasonable basis for arguing that their search advertisements were not purely commercial speech.

19

In addition, defendants had no reasonable basis to rely on *Wong v. Jing* to support their argument that their advertisements involved a matter of public interest. As noted, *Wong v. Jing* did not involve commercial speech. Moreover, the speech there directly addressed public issues (the use of nitrous oxide and mercury in dental practices). In contrast, the instant advertisements did not comment on public transportation, taxicab licensing and regulation or taxicab franchising. In short, no reasonable attorney could have concluded that the anti-SLAPP motion was well-taken. Accordingly, an award of reasonable attorney fees and costs was mandatory under section 425.16, subdivision (c).[9]

Under section 425.16, subdivision (c), "[a]ppellate challenges concerning the [special] motion to strike are also subject to an award of fees and costs, which are determined by the trial court after the appeal is resolved. [Citation.]" (*Christian Research Institute v. Alnor* (2008) 165 Cal.App.4th 1315, 1320; see also *Evans v. Unkow* (1995) 38 Cal.App.4th 1490, 1499-1500 [because section 425.16, subdivision (c) authorizes an award of attorney fees to prevailing party without limitation, appellate attorney fees are also recoverable].) Thus, on remand, plaintiffs may recover reasonable fees for this appeal. Because plaintiffs will be awarded fees for this appeal, we deem their motion for sanctions against defendants for filing a frivolous appeal moot.

---

[9] Because we find defendants' motion was frivolous on the merits, we need not address plaintiffs' alternative argument that the motion was brought solely for delay.

20

## DISPOSITION

The order denying the special motion to strike pursuant to section 425.16 is affirmed.  The order denying plaintiffs' motion for fees and costs is reversed, and the matter is remanded to the trial court for further proceedings in light of this opinion.  Plaintiffs are awarded their costs on appeal.

**CERTIFIED FOR PUBLICATION.**

MANELLA, J.

We concur:

WILLHITE, Acting P. J.

COLLINS, J.

21