Filed 3/10/21; certified for publication 4/6/21 (order attached)

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

| | |
|---|---|
| MUDDY WATERS, LLC, | |
| Petitioner, | E075582 |
| v. | (Super.Ct.No. CIVDS1717423) |
| THE SUPERIOR COURT OF SAN BERNARDINO COUNTY, | OPINION |
| Respondent; | |
| PERFECTUS ALUMINUM, INC., | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS; petition for writ of mandate. Keith D. Davis, Judge. Petition granted.

Davis Wright Tremaine, Bruce E. H. Johnson, Diana Palacios and Ambika K. Doran for Petitioner.

No appearance by Respondent.

Ruyak Cherian, Don F. Livornese; Dilworth Paxson, Thomas S. Biemer and Christie Callahan Comerford for Real Party in Interest.

## I. INTRODUCTION

On September 8, 2017, Perfectus Aluminum, Inc., (plaintiff or Perfectus) filed a civil complaint alleging causes of action for (1) violation of California Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.); (2) trade libel; and (3) intentional interference with prospective economic advantage.  Plaintiff named "Dupré Analytics" as the sole defendant in the complaint and alleged liability based upon the publication of two reports (Dupré Reports) that suggested plaintiff was part of a conspiracy to artificially inflate the sales of a large Chinese aluminum company.

Muddy Waters, LLC, doing business as Dupré Analytics (Muddy Waters) responded to the complaint by filing a special motion to strike pursuant to California's anti-SLAPP (strategic lawsuit against public participation) statute found in Code of Civil Procedure[1] section 425.16.  The trial court denied Muddy Waters's motion on the ground that Muddy Waters failed to show plaintiff's causes of action arose out of protected activity under section 425.16 and that alternatively, the commercial speech exception found in section 425.17, subdivision (c), precluded granting the motion.

Muddy Waters seeks writ relief from the superior court's denial of its motion, and we issued an order to show cause in response.  We conclude the trial court erred in denying Muddy Waters's special motion to strike.  Accordingly, we will order a writ of

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

2

mandate issue directing the superior court to vacate its order denying Muddy Waters's special motion to strike and to enter a new order granting the motion.

## II. FACTS AND PROCEDURAL HISTORY

A. *Facts and Complaint*

Muddy Waters is a firm engaged in the business of financial analysis and activist short selling. In July 2015, it took a short position[2] on the stock of China Zhongwang Holdings, Ltd. (Zhongwang)—a publicly traded Chinese company that purports to be one of the world's largest producers of aluminum goods. Muddy Waters then proceeded to publish the two Dupré Reports, which detailed an investigation into Zhongwang's operations and concluded that Zhongwang was engaged in a large-scale operation to fraudulently inflate sales through the use of intermediary companies owned or controlled by Zhongwang's founder and his proxies. Muddy Waters published the reports under the pseudonym "Dupré Analytics" and posted the reports on a website accessible to the public. Plaintiff was one of the intermediary companies referenced in the Dupré Reports.

In 2016, plaintiff made a business decision to export its aluminum product overseas due to changing market conditions. However, its aluminum product was detained at the port of Long Beach by the United States Customs and Border Protection

---

[2] A short sale "is a bet against the stock. In an ordinary short sale, the seller borrows stock from a lender (such as a brokerage firm's lending department), sells this stock to a buyer at the going price, and then purchases replacement stock— hopefully at a lower price— to return to the lender. Lenders typically charge a 'borrow' fee for lending shares to sell short. The seller profits if the stock price falls enough to cover all costs and fees associated with the sale, including borrowing the stock." (*Overstock.com, Inc. v. Goldman Sachs & Co.* (2014) 231 Cal.App.4th 513, 520 (*Overstock.com, Inc.*).)

3

agency while waiting to be loaded for export, and the product presumably remains detained to this day.

On September 8, 2017, plaintiff filed a civil complaint for damages and injunctive relief. The complaint named "Dupré Analytics" as a defendant; identified it as a "business entity of unknown form"; and alleged that it falsely claimed to be a research analyst and short seller of securities in Chinese companies. The complaint alleged that Dupré Analytics published two reports that falsely accused plaintiff of being complicit in an illegal scheme to import and stockpile aluminum; that representations in these reports were false; that the reports were subsequently disseminated and republished by numerous media outlets; and that plaintiff was harmed as a result. Based upon these allegations, plaintiff asserted causes of action for (1) unfair competition (Bus. & Prof. Code, § 17200 et. seq.); (2) trade libel; and (3) intentional interference with prospective economic advantage.

B. *Muddy Waters's Special Motion to Strike*

On February 8, 2018, Muddy Waters filed a special motion to strike plaintiff's complaint pursuant to section 425.16 in response to plaintiff's complaint. Muddy Waters appeared in the action as "Muddy Waters, LLC doing business as Dupré Analytics." The motion asserted that claims in the complaint arose from Muddy Waters's exercise of free speech in a public forum and were therefore entitled to dismissal, unless plaintiff could establish a probability of prevailing on the merits.

The motion was accompanied by the declaration of Carson Block, who attested that he was the chief investment officer of Muddy Waters, that Muddy Waters is in the

4

business of financial analysis and activist short sales, and that Muddy Waters authored the reports identified in the complaint under the pseudonym "Dupré Analytics." Mr. Block stated that in 2015, Muddy Waters began an investigation into Zhongwang, a publicly traded Chinese company. According to Mr. Block, this investigation led Muddy Waters to believe that Zhongwang was engaged in an extensive operation that involved using companies owned or controlled by Zhongwang's principal shareholder and proxies to facilitate sales of Zhongwang aluminum to related companies, allowing Zhongwang's principal shareholder and proxies to be personally enriched at the expense of shareholders and creditors of the company. As a result, Muddy Waters took a short interest in Zhongwang and published its findings in the first Dupré Report dated July 2015. This report implicated plaintiff as one of the companies used by Zhongwang's principal shareholder in order to stockpile aluminum goods and inflate sales. When Zhongwang denied allegations made in this first report, Muddy Waters issued a second report on September 9, 2015.

Muddy Waters's motion was also accompanied by a declaration of counsel, attaching various documents from actions filed in federal court against plaintiff by the United States and related to the detention of plaintiff's aluminum goods while awaiting export.

C. *Plaintiff's Opposition*

In opposition to the special motion to strike, plaintiff argued that the Dupré Reports did not constitute protected speech because they were not made in a place open to the public or in a public forum; did not involve a public issue or an issue of public

5

interest; and fell within the commercial speech exception set forth in section 425.17. Additionally, plaintiff argued that even if the reports were protected speech, its evidence was sufficient to show it had a probability of prevailing on the merits of its claims.

In support of this claim, plaintiff attached the declaration of Xiang Chun Shao, who declared that he was a manager of Perfectus's operations in California; Perfectus is in the business of purchasing and distributing aluminum products; an unidentified predecessor entity to Perfectus was responsible for importing the aluminum products currently held by Perfectus; and the aluminum products were imported with the intent to sell or lease the products. Xiang Chun Shao also declared that "[d]ue to changes in market conditions and an unsuccessful marketing strategy . . . none of the [aluminum products] was sold or leased [in the United States]" and that Perfectus "made a business decision to export the [products] to Vietnam." Finally, Xiang Chun Shao detailed that the aluminum product was ultimately detained by the United States while waiting to be loaded to ship abroad. As of the date of the declaration, the product remained detained by the United States.

Plaintiff also submitted deposition testimony by Carson Block and e-mail communications obtained during discovery that suggested the information contained within the Dupré Reports was the result of investigations funded or initiated by potential Perfectus competitors.

D. *Hearing and Ruling*

On June 26, 2020, the trial court held a hearing on Muddy Waters's special motion to strike. The trial court denied the motion on the basis that Muddy Waters had failed to

6

establish that plaintiff's claims arose out of protected speech, specifically concluding that the reports at issue constituted "commercial speech" exempt under section 425.17, subdivision (c), and that the reports were not published in a public forum. Given this conclusion, the trial court never reached the issue of whether plaintiff established a probability of prevailing on the merits. Muddy Waters filed a petition for writ of mandate challenging the trial court's denial of its motion to strike.

## III. DISCUSSION

A. *We Will Exercise Our Discretion To Review the Trial Court's Order*

Writ relief is appropriate where a party is left without a "plain, speedy, and adequate remedy, in the ordinary course of law." (§ 1086.) Normally, errors related to anti-SLAPP motions would not be subject to writ relief because "[a]n appeal from an order granting or denying an anti-SLAPP motion is an exception to the nonappealability of interlocutory orders. [Citations.] Such orders generally are appealable immediately, rather than as part of an appeal from a final judgment." (*Benton v. Benton* (2019) 39 Cal.App.5th 212, 217 (*Benton*).) "The point of the anti-SLAPP statute is that you have a right *not* to be dragged through the courts because you exercised your constitutional rights. The right to appeal a denial of an anti-SLAPP motion is important because it protects the interest validated by the anti-SLAPP statute." (*People ex rel. Lockyer v. Brar* (2004) 115 Cal.App.4th 1315, 1317-1318.)

"However, in 2003 the Legislature enacted section 425.17, which 'categorically exempts certain expressive actions from the scope' of anti-SLAPP protection [citation] and makes immediate appeal of an order applying the exemption unavailable. The

7

exempted speech has been referred to as 'comparative advertising.' [Citation.] The exemption applies where a speaker who is part of a business makes factual representations to potential customers about the business or a competitor's business, for the purpose of gaining sales." (*Benton*, *supra*, 39 Cal.App.5th at p. 217.)

Here, the trial court concluded that the commercial speech exception set forth in section 425.17, subdivision (c), applied and on this basis denied Muddy Waters's special motion to strike. Muddy Waters contends this decision was clearly erroneous and has left it without a plain, speedy, and adequate remedy to vindicate its substantive rights under the anti-SLAPP statutes.[3] In response, plaintiff does not dispute Muddy Waters's claim that it lacks an adequate remedy other than by way of extraordinary writ.

As we explain further, *post*, we agree the trial court erred in denying Muddy Waters special motion to strike based upon the commercial speech exception set forth in section 425.17, subdivision (c). Further, this error had the dual effect of depriving Muddy Waters of the substantive right to be free of the litigation costs associated with a SLAPP suit and also depriving it of the right to an interlocutory appeal of the order denying its motion—a right that Muddy Waters would otherwise have been entitled to exercise had the trial court not erroneously invoked section 425.17. Accordingly, we believe this case presents one of the rare circumstances where clear error has deprived

---

[3] Denial of a special motion to strike on the basis of the commercial speech exception renders the interlocutory appeal provisions of the anti-SLAPP statute inapplicable. (§ 425.17, subd. (e).)

Muddy Waters of a plain, speedy, and adequate remedy, such that writ relief is appropriate.

B. *Basic Legal Principles and Standard of Review*

" '[Section 425.16] sets out a procedure for striking complaints in harassing lawsuits that are commonly known as SLAPP suits . . . ,which are brought to challenge the exercise of constitutionally protected free speech rights.' [Citation.] A cause of action arising from a person's act in furtherance of the 'right of petition or free speech under the [federal or state] Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability' that the claim will prevail. [Citation.] 'The anti-SLAPP statute does not insulate defendants from *any* liability for claims arising from the protected rights of petition or speech. It only provides a procedure for weeding out, at an early stage, *meritless* claims arising from protected activity. Resolution of an anti-SLAPP motion involves two steps. First, the defendant must establish that the challenged claim arises from activity protected by section 425.16. [Citation.] If the defendant makes the required showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success.' " (*Sweetwater Union High School Dist. v. Gilbane Building Co*. (2019) 6 Cal.5th 931, 940 (*Sweetwater*).)

" 'We review de novo the grant or denial of an anti-SLAPP motion.' " (*Sweetwater*, *supra*, 6 Cal.5th at p. 940; see *Spencer v. Mowat* (2020) 46 Cal.App.5th 1024, 1036 (*Spencer*).) " 'We exercise independent judgment in determining whether,

9

based on our own review of the record, the challenged claims arise from protected activity.' " (*Spencer*, at p. 1036)

C. *Muddy Waters Met Its Burden To Establish Plaintiff's Claims Arise Out of Protected Speech*

"A claim arises from protected activity when that activity underlies or forms the basis for the claim. [Citations.] Critically, 'the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech.' . . . [T]he focus is on determining what the 'defendant's activity [is] that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning.' [Citation.] 'The only means specified in section 425.16 by which a moving defendant can satisfy the ["arising from"] requirement is to demonstrate *that the defendant's conduct by which plaintiff claims to have been injured* falls within one of the four categories described in subdivision (e).' " (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1062-1063.) One such category is "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest." (§ 425.16, subd. (e)(3).)

Here, it is undisputed that the two reports published by Muddy Waters were posted to an Internet website available to the public. This court has previously concluded that Internet postings on websites that " 'are open and free to anyone who wants to read the messages' " and "accessible free of charge to any member of the public" satisfies the public forum requirement of section 425.16. (*ComputerXpress*, *Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 1007 (*ComputerXpress*, *Inc.*).) Multiple Courts of Appeal and the California

10

Supreme Court have reached this same conclusion. (*Barrett v. Rosenthal* (2006) 40 Cal.4th 33, 41, fn. 4. ["Web sites accessible to the public . . . are 'public forums' for purposes of the anti-SLAPP statute."]; *Wong v. Jing* (2010) 189 Cal.App.4th 1354, 1366; *Summit Bank v. Rogers* (2012) 206 Cal.App.4th 669, 693; *D.C. v. R.R.* (2010) 182 Cal.App.4th 1190,1226.)[4] Plaintiff suggests that the facts in this case are distinguishable because the website at issue did not allow for public response or comment. Plaintiff has identified no authority for the proposition that a forum ceases to be public simply because interested persons may not be able to respond. Nor do we believe an individual's right to free speech should be limited or curtailed based upon the ability of another person to respond.

Accordingly, the trial court erred to the extent it concluded that the reports were not made in a public forum for purposes of section 425.16, subdivision (e).[5]

----

[4] We further note that one of the primary authorities upon which plaintiff relies in opposition reaches this exact conclusion, explaining: "In a sense, the Web, as a whole, can be analogized to a public bulletin board. A public bulletin board does not lose its character as a public forum simply because each statement posted there expresses only the views of the person writing that statement. It is public because it posts statements that can be read by anyone who is interested, and because others who choose to do so, can post a message through the same medium that interested persons can read." (*Wilbanks v. Wolk* (2004) 121 Cal.App.4th 883, 897.)

[5] Additionally, we do not believe the trial court's characterization of the reports as having been distributed to only a certain few individuals is supported by the record. Indeed both parties confirm that the reports at issue were not only disseminated to specific investors, but also available such that media outlets and the United States Customs and Border Protection Agency were aware of the reports. The evidence therefore strongly suggests the availability and distribution of the reports was not limited to select individuals.

It is also undisputed that the reports at issue were published to highlight an investigation and allegations that Zhongwang, a publicly traded company, was engaged in a scheme to artificially inflate its reported sales and business activity. Such statements are clearly made "in connection with an issue of public interest." (§ 425.16, subd. (e)(3).) Courts of Appeal have repeatedly recognized that allegations of mismanagement or investor scams in relation to publicly traded companies are made "in connection with an issue of public interest" for purposes of section 425.16, subdivision (e)(3). (*ComputerXpress*, *Inc.*, *supra*, 93 Cal.App.4th at pp. 1007-1008 [disparaging comments regarding alleged mismanagement of publicly traded company concerned an issue of public concern for purposes of § 425.16]; *GetFugu*, *Inc. v. Patton Boggs LLP* (2013) 220 Cal.App.4th 141, 151 ["investment scams are a matter of public interest" particularly when they involve a publicly traded company]; *Summit Bank v. Rogers* (2012) 206 Cal.App.4th 669, 694 [comments on financial stability of publicly traded bank "concerned an 'issue of public interest' within the meaning of section 425.16, subdivision (e)(3)"].)[6]

Plaintiff seeks to distinguish these authorities by arguing that Zhongwang is publicly traded on a stock exchange outside the United States; and, therefore, any fraudulent practices conducted by the company cannot involve issues of public concern within the United States. Plaintiff has not cited any authority for the proposition that

---

[6] Perfectus's reliance on *Wilson v. Cable News Network*, *Inc.* (2019) 7 Cal.5th 871 is clearly distinguishable. The case dealt with allegations of wrongdoing made against an individual and not a publicly traded corporation. (*Id.* at p. 903.)

section 425.16 protects only speech on matters of public concern within the United States. Nor do we see any logical reason to read such a limitation into the statute. An individual does not lose his or her right to free speech simply because the subject matter of that speech involves figures or actions occurring outside the United States.

Plaintiff's causes of action are all premised upon the representations made in the Dupré Reports. The record amply demonstrates that these reports were made in a public forum and concerned an issue of public interest. Accordingly, Muddy Waters met its initial burden to establish plaintiff's claims arose from protected speech, and the trial court erred to the extent that it concluded otherwise.

D. *Plaintiff Did Not Meet Its Burden To Show the Applicability of the Commercial Speech Exception*

Plaintiff argues that even if the Dupré Reports meet the requirements for protection under section 425.16, the trial court correctly concluded that the commercial speech exception set forth in section 425.17 applied. We disagree.

"[S]ection 425.16 sets forth a general statute [and] section 425.17 creates specified exemptions to it." (*Simpson Strong-Tie Co.*, *Inc. v. Gore* (2010) 49 Cal.4th 12, 23 (*Simpson Strong-Tie Co.*, *Inc.*)) As such, the burden of proof to establish an exemption such as the commercial speech exemption set forth in section 425.17 is on the plaintiff opposing the anti-SLAPP action and seeking the benefit of the exemption. (*Simpson Strong-Tie Co.*, *Inc.*, at pp. 22-26.)

"[S]ection 425.17(c) [exempts] from the anti-SLAPP law a cause of action arising from commercial speech when (1) the cause of action is against a person primarily

13

engaged in the business of selling or leasing goods or services; (2) the cause of action arises from a statement or conduct by that person consisting of representations of fact about that person's or a business competitor's business operations, goods, or services; (3) the statement or conduct was made either for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, the person's goods or services or in the course of delivering the person's goods or services; and (4) the intended audience for the statement or conduct meets the definition set forth in section 425.17(c)(2)." (*Simpson Strong-Tie Co., Inc., supra*, 49 Cal.4th at p. 30.)

"[T]his narrow commercial speech exemption applies to speech or conduct by a person engaged in the business of selling or leasing goods or services when . . . that challenged conduct pertains to the business of the speaker or his or her competitor." (*Dean v. Friends of Pine Meadow* (2018) 21 Cal.App.5th 91, 105; see *FilmOn.com Inc. v. DoubleVerify Inc.* (2019) 7 Cal.5th 133, 147 ["the language of section 425.17, subdivision (c), and subsequent case law indicate that the provision exempts 'only a subset of commercial speech'—specifically, comparative advertising"].) Under the plain language of the statute, a speaker's "representation of fact about a noncompetitor's goods for the purpose of promoting the speaker's own services" does not fall within this exception. (*Simpson Strong-Tie Co., Inc., supra*, 49 Cal.4th at pp. 32-33 [attorney's advertisement implying that manufacturer's screws were defective did not fall within exception because attorney and manufacturer were not business competitors, even if statements about manufacturer's product were intended to financially benefit attorney].)

14

Here, the evidence clearly demonstrates that Muddy Waters is in the business of financial analysis and activist short selling, whereas plaintiff is in the business of importing, exporting, selling, and leasing aluminum goods. There is no evidence to suggest that Muddy Waters is a business competitor of plaintiff; and, therefore, any representation by Muddy Waters does not fall within the commercial speech exception set forth in section 425.17, subdivision (c).

Plaintiff argues that the commercial speech exception should still apply because it has uncovered significant evidence that its business competitors funded and provided the investigative material contained within the Dupré Reports.[7] However, even assuming that the underlying investigative efforts were funded by plaintiff's competitors, that fact alone cannot create tort liability where none otherwise exists. "Conspiracy is not an independent tort; it cannot create a duty or abrogate an immunity. It allows tort recovery only against a party who already owes the duty and is not immune from liability based on applicable substantive tort law principles." (*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 514; see *Brown v. Professional Community Management, Inc.* (2005) 127 Cal.App.4th 532, 540.) Thus, even if taken as true, allegations of a conspiracy would operate to make plaintiff's competitors potentially liable for the publications but would not operate to preclude Muddy Waters from asserting any defense it might otherwise be entitled to invoke.

---

[7] Indeed, almost all of the evidentiary submissions in opposition to the underlying motion addressed this issue.

15

Finally, plaintiff's argument that the "true defendant" in this case is not Muddy Waters but "Dupré Analytics" is misplaced. "The designation of 'DBA' or 'doing business as' simply indicates [defendant corporation] operates under a fictitious business name. [Citations.] Use of a fictitious business name does not create a separate legal entity." (*Pinkerton's*, *Inc. v. Superior Court* (1996) 49 Cal.App.4th 1342, 1348.) "[W]hile a corporation may be sued by its fictitious business name, once its true name is discovered, all further proceedings should be in the corporate name." (*Id.* at p. 1349.) Separate appearances are not required, and an action cannot be maintained against the fictitious business name if the legal entity is entitled to dismissal. (*Ibid.*) Muddy Waters appeared in the action as "Muddy Waters, LLC doing business as Dupré Analytics" and a corporate officer of Muddy Waters declared under oath that Muddy Waters was responsible for publishing the Dupré Reports. Plaintiff has submitted no evidence of a separate legal entity by the name of Dupré Analytics, that it served any other entity under the fictitious name Dupré Analytics, or that any other entity has appeared in this action. Plaintiff cannot seek to maintain suit against an entirely fictitious entity where an actual, legal entity has acknowledged responsibility for the allegedly tortious acts set forth in the complaint and shown it is entitled to dismissal.

The fact that plaintiff believes other entities might also be liable for the acts alleged in the complaint does not justify denial of a special motion to strike brought by Muddy Waters. The record before us indicates Muddy Waters is the only defendant who has appeared in this action, and the only question we are asked to decide here is whether the trial court erred in denying Muddy Waters's special motion to strike. If plaintiff

16

believes other persons or entities are also responsible as coconspirators or joint tortfeasors, it should have sought leave to amend its complaint to name these other persons or entities as defendants. In the absence of any other named defendants, we have no occasion to consider whether the commercial speech exception set forth in section 425.17 might apply to other, unnamed persons or entities. We decide only that the record before us does not establish that Muddy Waters is a business competitor of Perfectus and, as such, plaintiff has not met its burden to show the statutory exception set forth in section 425.17 applies to Muddy Waters's special motion to strike in this case.

E. *Plaintiff Has Not Shown a Probability of Prevailing on the Merits*

Finally, plaintiff claims that even if Muddy Waters met its initial burden to show that the causes of action in the complaint arose out of protected speech, denial of the special motion to strike was still warranted because plaintiff made a sufficient showing of a probability of success on the merits. We disagree.

Even if a plaintiff's causes of action are premised upon a defendant's exercise of free speech or petitioning, section 425.16 "subjects to potential dismissal only those causes of action as to which the plaintiff is unable to show a probability of prevailing on the merits [citation], a provision [the California Supreme Court has] read as 'requiring the court to determine only if the plaintiff has stated and substantiated a legally sufficient claim.' " (*Equilon Enterprises v. Consumer Cause*, *Inc.* (2002) 29 Cal.4th 53, 63.) The court " 'considers the pleadings and evidentiary submissions of both the plaintiff and the defendant [citation]; though the court does not *weigh* the credibility or comparative probative strength of competing evidence, it should grant the motion if, as a matter of

17

law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim.' " (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 291.)  On appeal, we review de novo whether a party has demonstrated a probability of prevailing.  (*Nagel v. Twin Laboratories*, *Inc.* (2003) 109 Cal.App.4th 39, 44.)

Because our review is de novo, both parties have fully briefed the issue, and neither party contends the record is incomplete such that the issue cannot be fully considered in this appeal, we choose to consider the merits of whether plaintiff has established a probability of prevailing on its claims.  As we explain, *post*, plaintiff failed to produce evidence in support of essential elements of each of the causes of action asserted in its complaint.  Accordingly, plaintiff has not met its burden to show a probability of prevailing on the merits.

1.  <u>Plaintiff Has Not Established Standing To Bring an Unfair Competition Law Claim</u>

Plaintiff's first stated cause of action is one for violation of California's Unfair Competition Law (UCL).  (Bus. and Prof. Code, § 17200 et seq.)  "A UCL action is an equitable action by means of which a plaintiff may recover money or property obtained from the plaintiff or persons represented by the plaintiff through unfair or unlawful business practices.  It is not an all-purpose substitute for a tort or contract action." (*Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal.4th 163, 173.)  "Section 17204 of the [Business and Professions Code] governs a plaintiff's standing to assert a UCL claim. . . .  [O]nly plaintiffs who have suffered actual damage may pursue a private

UCL action. A private plaintiff must make a twofold showing: he or she must demonstrate injury in fact *and* a loss of money or property caused by unfair competition." (*Peterson v. Cellco Partnership* (2008) 164 Cal.App.4th 1583, 1590.) As subsequently interpreted by the California Supreme Court: "Because the lost money or property requirement is more difficult to satisfy than that of injury in fact, for courts to first consider whether lost money or property has been sufficiently alleged or proven will often make sense. If it has not been, standing is absent and the inquiry is complete." (*Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 325 (*Kwikset Corp.*).)

Here, nothing in the record suggests that plaintiff has lost money or property such that it would have standing to pursue a UCL action against Muddy Waters. While the complaint alleged that aluminum pallets were detained by the United States as a result of the allegations made in the Dupré Reports, plaintiff failed to produce any evidence to support this allegation when called to do so in opposition to the special motion to strike. " 'To establish a probability of prevailing, the plaintiff " 'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.' " . . . [T]he plaintiff cannot rely on the allegations of the complaint, but must produce evidence that would be admissible at trial.' " (*Nguyen-Lam v. Cao* (2009) 171 Cal.App.4th 858, 866-867.)

Here, plaintiff cites to a civil forfeiture action filed by the United States in which the Dupré Reports are referenced, claiming this constitutes evidentiary proof that the Dupré Reports contributed to the detention of its aluminum pallets by the United States.

However, the civil forfeiture action actually accuses plaintiff of attempting to circumvent antidumping and countervailing duties previously imposed by the United States Department of Commerce. The pleading filed by the United States referenced the Dupré Reports only once in the factual background as an event that led plaintiff to begin exporting its aluminum pallets out of the United States, giving the United States an opportunity to detain the product while awaiting export. None of the substantive allegations contained within the Dupré Reports are repeated in the allegations of the civil forfeiture pleading; the Dupré Reports were not cited as evidence of any of the claims made by the United States in filing its forfeiture action; and the United States did not purport to begin its investigation into plaintiff's operations as a result of the Dupré Reports.

More importantly, the declaration of Xiang Chun Shao submitted by plaintiff admitted that Perfectus was not given an explanation for the detention of its pallets by the United States, and that Perfectus was actually unaware of the reasons for any continued detention of its products. The declaration further suggested that Perfectus's aluminum pallets were being held as a result of unpaid duties, fees, or taxes, as Mr. Shao admitted Perfectus had been served with a summons pursuant to title 19 United States Code section 1509.[8]

---

[8] Title 19 United States Code section 1509(a), provides that a summons may be issued in "any investigation or inquiry conducted for the purpose of ascertaining the correctness of any entry, for determining the liability of any person for duty, fees and taxes due or duties, fees and taxes which may be due the United States. . . ."

In order to establish standing for purposes of a UCL claim, plaintiff was required to show a link between the alleged practice constituting unfair competition and a loss of money or property. It cannot make this showing by simply relying on the allegations of its pleading. Where the only evidence consists of an admission that plaintiff is actually unaware of the reason for detention of its property by the United States, the allegation that the detention was caused by the allegedly unfair practice of publishing the Dupré Reports is nothing but speculation. Nor has plaintiff suggested, let alone produced, any evidence of any other money or property lost as a result of the publication of the Dupré Reports. Absent evidence to suggest a link between the publication of the reports and a tangible loss of money or property, plaintiff has not shown it has standing to bring a UCL claim.

Plaintiff's reliance on *Overstock.com*, *Inc.*, *supra*, 151 Cal.App.4th 688 is unavailing. The case predates the California Supreme Court's clarification of how standing should be determined, for purposes of the UCL, in *Kwikset Corp.*, *supra*, 51 Cal.4th 310 and contains no substantive discussion of the statutory requirement that a private party must have "lost money or property" in order to have standing to bring such an action. The standing requirement is a necessary prerequisite for a private party to bring a successful UCL claim. Absent evidence to suggest it has standing, plaintiff has

not established a probability of prevailing on this cause of action.[9]

2. <u>Plaintiff Has Not Shown the Loss of Any Specific Business Relationship Due to Trade Libel</u>

Plaintiff's second cause of action is for trade libel. Both parties devote extensive argument to the issue of whether the statements in the Dupré Reports were false and whether there is evidence of actual malice. However, we need not discuss these arguments in detail because, even assuming plaintiff could prove falsity and actual malice, plaintiff has failed to produce any evidence that the Dupré Reports deterred any specific third party from conducting business with plaintiff as required to prevail on a trade libel claim.

Trade libel is generally defined as " 'an intentional disparagement of the quality of property, which results in pecuniary damage to plaintiff.' " (*Polygram Records*, *Inc. v. Superior Court* (1985) 170 Cal.App.3d 543, 548.) Despite its name, " 'trade libel' is not

_____

[9] Plaintiff also suggests that we should remand the matter to allow it to present further evidence of its standing because the issue was not brought up in the trial court proceedings. However, as applicable here, "[t]he second step of the anti-SLAPP analysis consists of 'a "summary-judgment-like procedure," ' " (*Medical Marijuana*, *Inc. v. ProjectCBD.com* (2020) 46 Cal.App.5th 869, 882) in which the plaintiff " 'must provide the court with sufficient *evidence* to permit the court to determine whether "there is a probability that the plaintiff will prevail on the claim." ' " (*ComputerXpress*, *Inc.*, *supra*, 93 Cal.App.4th at p. 1010.) " 'Standing is a threshold issue necessary to maintain a cause of action, and the burden to allege and establish standing lies with the plaintiff.' " (*People ex rel. Becerra v. Superior Court* (2018) 29 Cal.app.5th 486, 495{Fourth Dist., Div. Two}) By statute, a UCL claimant is expressly required to show the loss of money or property in order to establish standing to bring a claim. (Bus. & Prof. Code, § 17204.) Thus, plaintiff was not deprived of the ability to present evidence on this issue simply because the defendant did not argue this point. Instead, the burden always rested with the plaintiff to produce evidence of standing to the extent plaintiff sought to show a probability of prevailing on its UCL claim.

true libel and is not actionable as defamation." (*Id.* at p. 549.) Thus, as an initial matter, plaintiff's numerous citations to authorities addressing traditional libel or other types of defamation claims are misguided.[10]

While a cause of action for trade libel " 'resembles that for defamation . . . [it] differs from it materially in the greater burden of proof resting on the plaintiff, and the necessity for special damage in all cases. . . . [The] plaintiff must prove in all cases that the publication has played a material and substantial part in inducing others not to deal with him, and that as a result he has suffered special damages.' " (*Erlich v. Etner* (1964) 224 Cal.App.2d 69, 73 (*Erlich*).) At a minimum, a trade libel cause of action requires: "(1) a publication; (2) which induces others not to deal with plaintiff; and (3) special damages." (*Nichols v. Great Am. Ins. Cos.* (1985) 169 Cal.App.3d 766, 773.)

Thus, unlike a claim for defamation, trade libel requires as an essential element that plaintiff suffered direct financial harm because someone else acted in reliance on the defendant's statement. (CACI No. 1731.) To establish this element, " ' is not enough to show a general decline in [plaintiff's] business resulting from the falsehood, even where no other cause for it is apparent . . . it is only the loss of specific sales that can be recovered. This means, in the usual case, that the plaintiff must identify the particular

---

**10** In fact, none of the California authorities cited by plaintiff in its opposition brief address the distinct tort of trade libel and instead discuss other defamation related claims. (See *Weller v. ABC* (1991) 232 Cal.App.3d 991 [traditional defamation claim]; *Overstock.com*, *Inc.*, *supra*, 151 Cal.App.4th 688 [claim for libel and defamation]; *Good Government Group*, *Inc. v. Superior Court of Los Angeles County* (1978) 22 Cal.3d 672 [traditional libel claim]; *Sumner Hill Homeowners' Assn.*, *Inc. v. Rio Mesa Holdings*, *LLC* (2012) 205 Cal.App.4th 999 [slander of title].

purchasers who have refrained from dealing with him, and specify the transactions of which he claims to have been deprived.' " (*Erlich*, *supra*, 224 Cal.App. 2d at p. 73; see *Mann v. Quality Old Time Service*, *Inc.* (2006) 139 Cal.App.4th 328, 335-336 [plaintiff failed to establish probability of prevailing on trade libel claim in opposition to special motion to strike where plaintiff "did not present any evidence showing it had suffered a specific pecuniary loss as a result of the defendant's communications"].)

Thus, the existence of a specific customer or business entity that refrained from dealing with plaintiff as a result of reliance on the Dupré Reports is an essential factual element of plaintiff's cause of action for trade libel. Plaintiff has not directed us to any evidence in the record identifying any such customer or other business entity, let alone any specific contract or sale that it claims was lost as a result of the Dupré Reports. Nor have we been able to independently locate any such evidence in the record. Thus, even if we were to assume that plaintiff could prove the falsity of statements in the Dupré Reports and malice on the part of Muddy Waters, the absence of any evidence to suggest that a specific customer or business associate refrained from doing business with plaintiff as a result of the publications is fatal to its trade libel claim. The burden was upon plaintiff to produce evidence to show a probability of prevailing. Where there is no evidence to support an essential factual element of the cause of action alleged, plaintiff

has not met its burden.[11]

3.  Plaintiff Has Not Produced Evidence of Intentional Interference with

Prospective Economic Advantage

Finally, plaintiff's third cause of action is for intentional interference with prospective economic advantage.  We agree with Muddy Waters that plaintiff has not met its burden to show the existence of an economic relationship that contained the probability of future economic benefit to support this claim.

"[A] plaintiff that wishes to state a cause of action for [intentional interference with prospective economic advantage] must allege the existence of an economic relationship with some third party that contains the probability of future economic benefit to the plaintiff."  (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1164; see *Roy Allan Slurry Seal*, *Inc. v. American Asphalt South*, *Inc.* (2017) 2 Cal.5th 505, 509.)  An actual economic relationship with a third party is required, and liability cannot be premised on " ' "the more speculative expectation that a potentially beneficial relationship will arise" ' " in the future.  (*Sole Energy Co. v. Petrominerals Corp.* (2005) 128 Cal.App.4th 212, 243.)

Here, none of the evidence submitted by plaintiff identified a specific third party with whom plaintiff had an existing economic relationship, let alone a relationship that had the probability of future economic benefit.  In its brief on the issue, plaintiff has

---

[11] Nor are we inclined to interpret plaintiff's second cause of action as a claim for traditional defamation.  As plaintiff concedes, a traditional defamation claim would be barred by the applicable statute of limitations, and plaintiff's intent was to allege a claim for trade libel specifically because such a claim is subject to a longer limitations period.

declined to direct us to any such evidence or identify any such relationship, instead arguing that it may rely solely on general, nonspecific allegations of its pleading. However, in the context of a special motion to strike, once Muddy Waters established that the plaintiff's claims arose from protected activity under section 425.16, the burden shifted to plaintiff to produce evidence to show a probability of prevailing on the merits. Therefore, it was incumbent on plaintiff to produce evidence to show a specific economic relationship with the prospect of future economic advantage. The failure to produce any evidence in support of this threshold element of a claim for intentional interference with prospective economic advantage compels the conclusion that plaintiff has not shown a probability of prevailing on the merits.[12]

## IV. DISPOSITION

Let a writ of mandate issue directing the superior court to vacate its order denying petitioner's motion to strike the complaint and enter a new order granting the motion and striking the complaint. The order to show cause is discharged and the stay previously ordered by this court is lifted when this opinion becomes final. Petitioner to recover its costs.

---

[12] In fact, plaintiff's evidence strongly suggested that no such relationship existed, as the declaration of its manager stated that due to changing market conditions and a failed marketing strategy, plaintiff was unable to find any customers to purchase or lease its aluminum products.

26

Petitioner is DIRECTED to prepare and have the writ of mandate issued, copies served, and the original filed with the clerk of this court, together with proofs of service on all parties.

FIELDS _____

J.

We concur:

MILLER _____

Acting P. J.

RAPHAEL _____

J.

Filed 4/6/21

**CERTIFIED FOR PUBLICATION**


**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**


**ORDER**


| | |
|---|---|
| MUDDY WATERS, LLC,<br>    Petitioner,<br>v. | E075582 |
| | (Super.Ct.No. CIVDS1717423) |
| THE SUPERIOR COURT OF SAN<br>BERNARDINO COUNTY,<br>    Respondent; | ORDER CERTIFYING OPINION FOR<br>PUBLICATION |
| PERFECTUS ALUMINUM, INC.,<br>    Real Party in Interest. | |



THE COURT

    The request for publication of the nonpublished opinion filed in the above matter March 29, 2021, is GRANTED.  The opinion meets the standards for publication as specified in California Rules of Court, rule 8.1105(c)(2), (4), and (6).

    IT IS SO ORDERED that said opinion filed March 10, 2021, be certified for publication pursuant to California Rules of Court, rule 8.1105(b).


FIELDS                              
                                    J.

We concur:


MILLER                    
            Acting P. J.

RAPHAEL                   
                    J.